IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07-10018 |
| v. ) | |
| ) | |
| LAWRENCE OSBORNE, JR., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant Lawrence Osborne, Jr.'s Motion to Suppress Evidence [# 9]. For the reasons set forth below, Osborne's Motion to Suppress Evidence is GRANTED.

## BACKGROUND

Defendant Lawrence Osborne ("Osborne") has filed a Motion to suppress evidence seized by the East Peoria Police Department in connection with the impoundment and inventory search of his motor vehicle. The facts surrounding this matter are not in dispute. On July 25, 2006, East Peoria police officer Martin was called to Tony and Sons Autobody Shop ("Shop"). The Shop also tows vehicles for the city of East Peoria. Upon officer Martin's arrival at the Shop, the service manager informed him that Osborne had just brought in a vehicle to be worked on. The service manager said that he recognized Osborne because Osborne had brought in a car on a previous occasion. The manager explained to officer Martin that the Shop had performed a substantial amount of work on the first car Osborne had brought in, totaling $4,000, but when the Shop had completed the repairs, Osborne did not have the money to pay. Osborne then made several phone calls and finally provided the Shop with a credit card number. The Shop accepted

the credit card information, released the car to Osborne and later discovered that the credit card information was fraudulent.

Armed with that information, officer Martin approached Osborne and related the facts that the service manager had disclosed. Osborne provided the explanation that a cousin or other relative had given him the credit card information. Officer Martin then asked Osborne to accompany him to the East Peoria police station to continue their conversation, and Osborne agreed. At this point Osborne was not under arrest.

When Osborne left for the police station, the car was inside the Shop in a work bay. There had been no discussion between the officer and Osborne as to what Osborne wanted to do with the car. Also, there had been no discussion between the officer and the service manager or anyone else at the Shop regarding the car.

At the police station, Osborne was interviewed by Detective Swearingen. Osborne gave various explanations regarding the fraudulent credit card which were subsequently checked and found not to be truthful. At this point, Osborne was placed under arrest and advised of his Miranda rights, which he waived.

Detective Swearingen advised Police Sargent Kamm that Osborne had been placed under arrest and requested that Kamm inventory the car at the Shop. If the car had not already been at the Shop it would have been towed, but the tow was unnecessary because the Shop provides towing services for the city of East Peoria. Sargent Kamm and officer Martin conducted an inventory search of the car at the Shop. The car remained in the bay during and after the search.

Osborne was indicted on February 22, 2007, for fraud with identification documents and for trafficking in counterfeit unauthorized access devices. On April 26, 2007, Osborne filed a

Motion to Suppress any evidence that was seized as a result of the inventory search conducted by the East Peoria police officers.  The Court held a hearing on Osborne's Motion to Suppress Evidence on June 6, 2007, and this Order follows.

## DISCUSSION

Osborne requests that this Court suppress any evidence obtained from the search of the vehicle on the grounds that the police officers violated his Fourth Amendment right to be free from unreasonable search and seizure when they conducted a warrantless search of the vehicle without probable cause.  Osborne argues that the officers lacked a substantive basis for the inventory search because Osborne was not in custody or under arrest at the time he left the vehicle at the Shop and because the officers were not in possession of any facts that would provide them probable cause to justify a warrantless search of the vehicle.  Osborne further asserts that when he left the vehicle with the Shop, a bailment relationship existed, and neither he nor the Shop sought to end that relationship.

In response, the Government argues that the search of the vehicle constituted a valid inventory search because the police officers were acting in accordance with the East Peoria Police Department's written policy governing inventory searches incident to arrest.  The Government asserts that since such a standard policy exists and since the officers acted in good faith pursuant to that policy, which authorizes police discretion in determining when to conduct an inventory search, the search was reasonable and therefore valid.

The Court must determine whether the search of Osborne's vehicle by the police officers constitutes a valid inventory search.  In a Fourth Amendment claim, the decision of whether a search or seizure is reasonable is  intensely fact driven and should be determined based on the

totality of the circumstances. *See*, *South Dakota v. Opperman*, 428 U.S. 364, 373 (1976); *U.S. v. Griffin*, 729 F.2d 475, 485 (7th Cir. 1984). If a search or seizure is found to be in violation of the Fourth Amendment, the evidence obtained from the illegal search or seizure may be properly suppressed via the exclusionary rule. *See Arizona v. Evans*, 514 U.S. 1, 11 (1995); *U.S. v. Duguay,* 93 F.3d 346, 354 (7th Cir. 1996). Under the factual circumstances surrounding the impoundment of Osborne's vehicle, the Court finds that the impoundment was invalid.

I. *The Rationale for Impoundment*

The Seventh Circuit has recognized that in assessing the validity of an inventory search, "the decision to impound (the 'seizure') . . . is properly analyzed as distinct from the decision to inventory (the 'search')." *Duguay,* 93 F.3d at 351. Therefore, for an inventory search to be valid, the impoundment of the vehicle must be valid. *U.S. v. Jensen,* 169 F.3d 1044, 1048 (7th Cir. 1999). Impoundment is valid when a police officer is acting in furtherance of his or her role as "community care-taker." *Duguay*, 93 F.3d at 352. Such "care-taking" functions include removing vehicles from roads or highways that may present a safety hazard or removing vehicles that are abandoned or that violate parking ordinances. *Id.*

The decision to impound must also be made according to standard police inventory policies and procedures. *Duguay*, 93 F.3d at 351. *See also U.S. v. Cherry*, 436 F.3d 769, 774 (7th Cir. 2006) (impoundment is valid where executed pursuant to standard police procedures providing for removal of vehicles that present safety hazards on public roadways). The policy need not be written but must be firmly established. *Duguay*, 93 F.3d at 351. The requirement for standardized impoundment and search procedures are designed to prevent situations in which police use an inventory search as a "ruse for general rummaging in order to discover

incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

## II. *East Peoria Police Department Impoundment Procedures*

The East Peoria Police Department has adopted a standardized, written policy detailing the circumstances and procedures officers should follow when towing a vehicle. The policy consists of three main sections: "Purpose," "Policy" and "Procedure." The "Procedure" section is broken into three sub-sections, the first of which is titled "General Guidelines." The following situations give cause to tow a vehicle under the "General Guidelines":

> 1. When a vehicle left unattended upon a street or highway . . . and constitutes a definite hazard or obstruction to normal movement of traffic, officers may remove such vehicle.
>
> 2. Officer may, with Shift Supervisor's approval remove and/or impound . . . any vehicle found upon a street or highway under the following circumstances:
>
>> [T]he vehicle was stolen or taken or without the owner's consent; or
>>
>> The vehicle is so disabled as to constitute an obstruction to traffic . . .; or
>>
>> The driver of the vehicle is taken into custody by the East Peoria Police
>>
>> Department and the vehicle would be left unattended upon the street.

The subsection following "General Guidelines" under the "Procedure" section is titled "Custodial Arrest." This subsection provides, "1. Following a custodial arrest, the officer will determine if the arrestee's vehicle is to be impounded." The subsection goes on to relate the procedures the officer must follow upon deciding to impound an arrestee's vehicle.

## III. *The Reasonableness of the Police Department's Impoundment Procedures*

The Government argues that since the Police Department has adopted a set of written, standard guidelines and because those guidelines were followed when the officers impounded and searched Osborne's vehicle, the impoundment and search were valid. The Court disagrees.

The facts of the instant case do not meet any of the conditions that would trigger a valid tow under the "General Guidelines" subsection of the Police Department's tow policy or under the officers' "community care-taking" functions. Therefore, the instant case is distinguished from *U.S. v. Cherry*. In *Cherry*, the court found that the vehicle did present a safety hazard because it was located on the side of an interstate highway, and the court's analysis did not proceed beyond that point. 436 F.3d 769, 773-774 (7th Cir. 2006). Osborne's vehicle was not left on the street and did not present any sort of safety hazard; it was parked on the private property of an autobody shop and did not present any hazards to the public.

Therefore, this situation must fall under the "Custodial Arrest" subsection. While the provisions of the "Custodial Arrest" subsection technically constitute a policy, for all practical purposes, it is no policy at all. The subsection sets forth no criteria by which the decision to impound is to be made. Essentially, it provides for unfettered police discretion in making impoundment decisions. A police department tow policy cannot delegate enforcement of the Fourth Amendment to the discretion of police officers.

The "Custodial Arrest" subsection could also be read in conjunction with the "General Guidelines," incorporating the criteria set forth by the "General Guidelines" for determining when to tow in custodial arrest situations as well. However, even under this reading, the policy would not provide grounds to justify the impoundment of Osborne's vehicle because the circumstances still fail to meet the criteria of the "General Guidelines."

In support of its policy of discretionary impoundment, the Government asserted in its Memorandum that the police officers were not acting in "bad faith." The Government appears to be relying upon *Colorado v. Bertine*, which states that "*reasonable* police regulations relating to

inventory procedures administered in good faith satisfy the Fourth Amendment, even though the courts might as a matter of hindsight be able to devise equally responsible rules requiring a different procedure." 479 U.S. 367, 374 (1987) (emphasis added).  However, the Government's apparent reliance on *Bertine* is misguided.  The operative term in the *Bertine* court's statement is "reasonable."  Simply because a police department adopts a policy that explicitly provides for police discretion does not mean the policy is automatically reasonable. A policy of unfettered police discretion swallows the rule.

      Furthermore, protecting an arrestee's property from theft or vandalism does not, by itself, establish a valid justification for impoundment.  *See Duguay*, 93 F.3d at 352 ("The police owe no duty to incarcerated persons to protect personal property from private injury.");  *U.S. v. Cooley*, 119 F. Supp. 2d 824, 829 (N.D. Ind. 2000) (police impoundment policy found unreasonable because based on rationale that police must impound to protect vehicles from theft or vandalism).  In addition, "[t]he Illinois Local Government Tort Immunity statute does not impose a duty on the police to protect the property of individuals from tort or crime." *Duguay*, 93 F.3d at 352.  Therefore, any additional justification that may exist for the decision to impound based on such a rationale is not valid.

      Two recent District Court cases have found inventory searches unreasonable even where the searches were conducted pursuant to standard police policy.  In *U.S. v. Cooley*, the Northern District of Indiana held that the East Chicago Police Department's standard policy of impounding the vehicle belonging to any person who had been arrested was not reasonable because the rationale for the policy–protecting vehicles from vandalization and theft–was unreasonable under the Fourth Amendment. 119 F. Supp. 2d at 829.

In *U.S. v. Bridges*, the Southern District of Iowa declined to uphold an inventory search as valid despite the existence of standard, written police inventory guidelines. The court found that since the vehicle was parked in an Amoco parking lot stall it did not present a hazard that would trigger the police's community "care-taking" function and call for impoundment. 245 F. Supp. 2d 1034, 1037 (S.D. Iowa 2003).

In the instant case, the Court does not doubt that the police were doing what they thought was right given the circumstances, nor is the Court suggesting that the East Peoria police officers were acting in bad faith. However, because the impoundment did not reasonably occur in conjunction with the police officers' "community care-taking" role and was not pursuant to a reasonable police department policy, the impoundment as conducted was not legally supported and is invalid. Consequently, the inventory search was invalid. Any evidence discovered by the police as a result of the inventory search of the vehicle is suppressed.

## CONCLUSION

For the reasons set forth above, Osborne's Motion to Suppress Evidence [#9] is GRANTED. Any appeal must be filed within thirty days of this Order.

ENTERED this 13th day of June, 2007.

                                                     s/ Michael M. Mihm
                                                     Michael M. Mihm
                                                     United States District Judge